Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 CR 922 - 1,2,3 & 7 | DATE | 9/21/2004 |
| CASE TITLE | USA vs. Duff, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss counts 2-15 and 24-30 of the second superseding indictment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | SEP 22 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 9/21/2004 | |
| MPJ | courtroom deputy's initials | date mailed notice / MPJ mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 CR 922 |
| ) | |
| JAMES M. DUFF, PATRICIA GREEN DUFF, ) | |
| WILLIAM E. STRATTON, JOHN J. LEAHY, ) | |
| EDWARD WISNIEWSKI, STARLING ) | |
| ALEXANDER, AND TERRENCE DOLAN, ) | |
| ) | |
| Defendants. ) | |



## MEMORANDUM OPINION AND ORDER

Defendants James M. Duff, William E. Stratton, Patricia Green Duff, and Terrence Dolan move to dismiss counts 2-15 and 24-30 of the second superseding indictment (the "indictment").

The indictment charges defendants with conspiracy, racketeering, mail fraud, wire fraud, and money laundering. The motion is addressed only to the mail fraud and money laundering charges. The indictment charges that defendants conspired among themselves and with others, both named and unnamed, to defraud the City of Chicago (the City) by falsely representing that certain entities, which were in fact owned and managed by Mr. Duff, were qualified as Minority-Owned Businesses ("MBE's") or Women-Owned Businesses ("WBE's") under Chapter 2-92-420 et seq. of the amended Municipal Code of the City of Chicago. The Municipal Code's provisions are designed to provide set-asides for MBE's and WBE's in connection with large contracts let by the City for competitive

bidding. In order to qualify for the set-asides, businesses must be at least 51% owned and controlled by one or more minorities or women.

For purposes of the motion to dismiss, the well-pleaded allegations of the indictment must be taken as true. *United States v. Yaskas*, 166 F.3d 873, 880 (7th Cir.1999)

The charging allegations are numerous and specific. Using the charges that involve just two of the Duff businesses as examples, the allegations may be summarized as follows. Windy City Maintenance, Inc. was certified as a WBE in 1991 on the basis of a sworn affidavit and certain other statements made by Patricia Green Duff to the effect that she was the real owner and controlled the operations of Windy City Maintenance. In fact, Ms. Green Duff, who is the mother of James M. Duff, was not the real owner of the business; it was owned and controlled by Mr. Duff. In 1994, Remedial Environmental Manpower, Inc. (REM), was qualified by the City as an MBE on the basis of a sworn affidavit and other statements of Mr. Stratton, an African-American, who claimed that he was the real owner and controlled the operations of REM. In fact, Mr. Duff, not Mr. Stratton, owned and controlled REM. Similar allegations are made with respect to the other Duff-owned businesses.

The indictment charges the pattern of deceit did not end with the initial qualification of the entities; on-going compliance

requirements of the Municipal Code were flouted by similar deceptions made in subsequent years. As a result, the entities specifically mentioned above, together with other Duff-owned and controlled businesses, obtained direct contracts and sub-contracts worth more than 100 million dollars and generated payments and distributions for the benefit of the named defendants and other relatives and associates of Mr. Duff aggregating more than nine million dollars.

I.

Counts 2-15 allege the facts summarized above and the use of the mails in connection with the scheme described. Mail fraud is established as a federal crime by 18 U.S.C. § 1341, which provides in relevant part:

> (W)hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,... for the purpose of executing such scheme ..., places in any ... authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... or takes or receives therefrom, any such matter or thing, ... shall be fined under this title or imprisoned not more than 20 years, or both ....

In *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court held that the "scheme or artifice to defraud" and "obtaining money

3

or property" clauses of § 1341 were to be construed conjunctively rather than disjunctively. *McNally* further held that § 1341 does not reach the intangible rights of the citizenry to good government. *McNally*, 483 U.S. at 356.

Defendants' principal argument is that because the City's only interest in the set-aside program's qualification provisions is purely regulatory and cannot be deemed "property," no offense has been stated. They insist that under *McNally* and subsequent cases the "property" obtained by scheme or artifice to defraud must have an economic or pecuniary value.

*McNally* involved a scheme by which state officials were alleged to have defrauded the Commonwealth of Virginia when they failed to advise other Commonwealth officers that they had pressured the primary broker for the Virginia workmen's compensation insurance program into splitting commissions on insurance with an entity the defendants owned. However, no moneys of the state were involved, because the premiums were actually paid by private parties. *McNally*, 483 U.S. at 360. The possibility that a different result would obtain in a case where the victim had been deprived of exercising control over how its money should be spent was expressly recognized. Justice White, writing for the majority, held that loss of money or property was an essential element of a violation of § 1341, but noted specifically that

4

>   Nor was the jury charged that to convict it must find
>   that the Commonwealth was deprived of control over how
>   its money was spent.

*McNally*, 483 U.S. at 360. A few months after the decision in *McNally*, in *Carpenter v. United States,* 484 U.S. 19, 25 (1987), a unanimous Court held that *McNally* did not dictate reversal of mail fraud convictions arising from a scheme by a Wall Street Journal reporter to deprive his employer of its property right to exclusive use of information it had collected prior to public disclosure. The Court expressly rejected the argument that § 1341 could only be applied to schemes involving the deprivation of <u>tangible</u> property.

*Cleveland v United States*, 531 U.S. 12, 19 et seq. (2000), on which Defendants also rely, is distinguishable from the case at bar. In *Cleveland*, the defendants had obtained by fraud a license to operate video poker machines. The Court held that such a license was not "property" in the government regulator's hands, and that, "Such regulations are paradigmatic exercises of the States' traditional police powers." 531 U.S. at 23. It distinguished the regulatory interest of a state from "an interest that 'has long been recognized as property.'" 531 U.S. at 23. The defendants in *Carpenter* were not alleged to have deprived the State of the power to control how its money was spent, but merely to have lied in obtaining a license. In the present case, the defendants' conduct deprived the City of the power to control how its money should be

5

spent. Under the minority set-asides established in the Ordinance, the City made it unmistakably clear how it wanted its money spent, and defendants' conduct, if true, thwarted the City's legislative intent. By allegedly falsely representing the identity of owners and management in Duff family businesses, defendants are accused of causing over a hundred million dollars in City money to go to businesses that were neither MBE's or WBE's.

Defendants' attempt to distinguish other cases cited by the government is unavailing. *United States v. Shyres*, 898 F.2d 647 (8th Cir.), *cert. denied*, 498 U.S. 821 (1990), followed *McNally* in holding that the right to control spending is a property right within the purview of § 1341. *Shyres*, 898 F.2d at 652. The purported distinction of *United States v. Fagan*, 821 F.2d 1002, (5th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988), on the ground that it was decided before *McNally* and did not take into consideration *McNally's* "property" requirement, is also incorrect. The *Fagan* opinion was prepared prior to the release of the *McNally* opinion, but the Fifth Circuit took pains to demonstrate, prior to its publication, that it was consistent with *McNally*. *Fagan*, 821 F.2d at 1010-11 n.6.¹

---

¹Defendants' citations to the opinions of other courts of appeals and district courts which, allegedly, support their position are also unpersuasive. None of those cases involved a scheme to defraud the victim of power over how its money should be spent. *United States v. Ashman*, 979 F. 2d 469, 479 (7th Cir. 1992), held that a failure by the Chicago Board of Trade to execute trades by public outcry was not a deprivation of property, because the

6

II.

Defendants also argue that the City suffered no actual loss, because the indictment does not charge that the Duff-owned companies gave less than full value in providing their services. They characterize *United Sates v. Granberry*, 908 F.2d 278 (9th Cir. 1990) as "not helpful" to the government and argue further that "*Granberry* provides no authority for the Court here" (Defendants' Reply Memorandum 7 n.4). In *Granberry*, the defendant had obtained employment with a Missouri school district as a school bus driver by deliberately concealing his prior conviction for murder. The indictment alleged that this deception caused the State and the School District to be deprived of ten separate types of money or property, all in violation of § 1341. The Eighth Circuit held that the types of property described in charges B 1-3 of the *Granberry* indictment, which all involved either the State's processing of employment applications or the control of

---

buyers would not have received any more money had the commodity bidding been done in the open pit. In *United States v. Bruchhausen*, 977 F. 2d 464 (9th Cir. 1992), convictions for wire fraud were reversed because the rights of the United States to pursue forfeiture remedies and of manufacturers to control the resale of their products to parties prohibited by law from purchasing the products, were held not to be property interests of those parties that would qualify under the *McNally* standard. There was no basis in *Bruchhausen* for an allegation that the defendant had deprived any victim of power over how its money would be spent. The same is true of *United States v. F.J. Vollmer & Company, Inc.*, 1 F.3d 1511, 1520-21 (7th Cir. 1993) (interest of the United States in preventing the unlawful disposition of weapons was regulatory and not property within the meaning of *McNally*).

distribution of school bus driving permits did not constitute "property" within the meaning of § 1341 but were strictly regulatory in nature. However, the Eighth Circuit found that Item (A)(1), "Money from the Normandy School District in the form of wages" fell "within the narrowest reading of the ["property" clause] of the statute." *Granberry*, 908 F.2d at 279-280. Other items which the court held were essentially the school district's "property" within the meaning of the Act were the following: the exclusive control of the distribution of a limited number of school bus driving jobs, <u>the exclusive control of how its money is spent</u>, the exclusive control of who the school district hired, and the school district's control over the persons and type of persons with whom it decided to enter employment agreements.

The *Granberry* defendant also argued that the school district did not lose any money, since it sought and hired a competent driver. The Eighth Circuit disagreed, holding

> What the School District wanted was a competent school-bus driver who was truthful and had not been convicted of a felony, and this is not what it got. The School District has been deprived of money in the very elementary sense that its money had gone to a person who would not have received it if all the facts had been known.

*Granberry*, 908 F.2d at 280. Thus, *Granberry* not only follows *McNally* in holding the right to control how one's money is spent is a property right cognizable under § 1341, it also rejects the notion that one may avoid the sweep of the Section by showing that the victim received market value for its money.

The assertion that the businesses owned and controlled by Mr. Duff performed satisfactorily under the contracts obtained by them through fraud is not a defense to the indictment. *Ranke v. United States*, 873 F.2d 1033, 1038 (7th Cir.1989).

### III.

Defendants contend that the sub-contracts between the Duff-owned businesses they allegedly falsely represented as qualified for set-asides and Waste Management do not support the § 1341 charge of Count Two. Here, they again read *McNally* incorrectly, arguing that since the City made no direct payments to a Duff-owned business under the sub-contracts, the City has not sustained the monetary or pecuniary loss, which they say *McNally* requires. As I have already noted, however, under *McNally* pecuniary injury or loss is not an essential element of a § 1341 offense.

Further, using innocent third parties to effect a scheme to defraud does not shield the perpetrator from criminal penalties. Defendants argue that cases relied upon by the government for this proposition arose under the statute generally governing conspiracy against the government (18 U.S.C. § 371) which has a broader sweep

9

than § 1341 (See, e.g., *United States v. Barker Steel Co.*, 985 F.2d 1123 (1st Cir. 1993)), but this purported distinction does not make the cases any less persuasive on the issue of third party involvement.

IV.

Defendants ask that Counts Nine Through Fifteen be dismissed on the ground that all of the mailings of checks from the City described in those counts were to third party general contractors Waste Management, Tishman or APMG; that none was a use of the mails to further a scheme, and that the mailings would have occurred regardless of defendants' conduct.

The defendants' alleged scheme was a continuing one that lasted through the 1990's. The core element of the scheme was the masquerade of Duff-owned and controlled businesses as MBE's and WBE's, which allowed those entities to gain, fraudulently, large fees as sub-contractors of the general contractors to which the checks were mailed. Under §1341, a mailing will be considered in furtherance of a scheme to defraud if it is incidental to an essential part of the scheme. *United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir. 2002). If the City had not mailed checks to the prime contractors, defendants' entities would have gained nothing from their alleged fraudulently obtained status as qualified sub-contractors. See *United States v. Dacri*, 827 F.Supp. 550, 555 (E.D. Wis. 1993).

V.

Defendants' final argument is that where counts alleging "specified unlawful activity" are dismissed, money-laundering charges related to the proceeds of such activity must also be dismissed. On this basis alone, defendants assert, counts 24-30 of the indictment cannot stand. Since I decline to dismiss any of the prior counts of the indictment on which the money-laundering charges are based, this argument is moot.

CONCLUSION

For the foregoing reasons, I deny the defendants' motion to dismiss in its entirety.

ENTER ORDER:

*Elaine E. Bucklo* (signature)

**Elaine E. Bucklo**
United States District Judge

Dated: September 21, 2004