IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 03 CR 922 |
| JAMES M. DUFF, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

James Duff was charged in a 33 count indictment with engaging in a racketeering conspiracy under 18 U.S.C. sec. 1962(d) involving fraud against the city of Chicago, another fraud scheme involving Workmen's Compensation insurance, and money laundering. He was also charged with tax fraud. Mr. Duff pled guilty to all charges shortly before his trial was to begin. I held a three-day sentencing hearing in his case on May 16-18, 2005 and ultimately sentenced Mr. Duff to 118 months in the custody of the Bureau of Prisons. This memorandum is written for the purpose of explaining the factors that entered into my decision as to Mr. Duff's sentence.

Mr. Duff was indicted in September, 2003, along with six others who were alleged to have participated with Mr. Duff in various criminal activity. Trial was set for October 4, 2004, but reset to January 24, 2005 on Mr. Duff's motion. On December 24, 2004, Mr. Duff notified the Government that he wanted to plead

guilty. When he appeared for his guilty plea, however, on January 6, 2005, he attempted to plead to a factual statement that did not encompass the charges brought by the Government. On January 10, 2005, he again appeared before the court and in a plea colloquy that took four hours due to his reluctance to admit to the facts that would sustain the charges, eventually pled guilty to the charges in the superceding indictment. Trial of four of the other defendants began on January 24, 2005. The jury returned a verdict of guilty as to all but one of these defendants on February 24, 2005. One of the remaining defendants, who was ill, is scheduled for trial this fall. The last defendant was Mr. Duff's mother, Patricia Duff. She was dismissed when it was determined that she was not competent to stand trial.

In summary, the indictment to which Mr. Duff pled guilty charged, and the evidence demonstrated, that Mr. Duff obtained in excess of $100,000,000 in contracts from the City of Chicago that had been set aside for minority and women owned businesses by falsely representing that two companies actually owned and controlled by him were owned and operated either by his mother or another defendant, William Stratton. Neither of these defendants in fact had control or operated either business. Mr. Stratton, an African American, was essentially the chauffeur and companion of Mr. Duff's father. His mother had nothing to do with the business. To disguise his actual ownership and control of these businesses,

Mr. Duff created another company to which he diverted millions of dollars in proceeds from the City contracts. He pled guilty to money laundering charges in connection with this conduct. In a second fraudulent scheme, Mr. Duff over a long period of time misled and concealed from insurance companies the fact that most of the workers employed by his companies were manual laborers, which required a higher workman's compensation premium, rather than clerical workers, which he represented the workers to be. Mr. Duff also pled guilty to income tax fraud involving two of his companies over a three-year period.

The principles involved in determining Mr. Duff's sentence are directed by *United States v. Booker,* 125 S. Ct. 738 (2005). In that case the Supreme Court held that the United States Sentencing Guidelines must be "merely advisory" in order to avoid violating the Sixth Amendment to the United States Constitution, and that the trial judge retains "broad discretion in imposing a sentence within a statutory range." *Id.* at 750. In addition to considering the Sentencing Guidelines, I am to consider the factors listed in 18 U.S.C. § 3553(a).

The Government and Mr. Duff disagreed over the appropriate Guidelines Manual that should be considered in this case. While the Government agreed that the 1998 Manual would be applicable to Mr. Duff's co-defendants, it argued that because he continued to reap the benefits of the City fraud and to divert money from the

companies involved in the City fraud to a separate company through 2001, the 2001 Manual should apply. I concluded that since his companies had been "decertified" as minority/women owned businesses before this time, I would look at the 1998 Manual in considering his sentence.

Mr. Duff's three-day sentencing hearing was largely consumed with an attempt to determine "loss" under the Sentencing Guidelines. The first "loss" issue involved the harm caused by Mr. Duff successfully defrauding the City of Chicago out of more than $100,000,000 in contracts. The Probation Department determined that the amount of loss involving this fraud was $112,406,580, which was the value of the benefits diverted from the City's WBE/MBE set aside program. The Government supported this position, arguing that USSG sec. 2F1.1, Application Note 8(d) in the 1998 Guideline Book, or 2(F)(ii), Special Rules, to USSG sec. 2B1.1 (2001 Book), both provide that "loss is the value of the benefits diverted from intended recipients or uses" (1998 Book) or "in the case involving Government benefits (...entitlement programs), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses,..." (2001 Book). Mr. Duff contended that his company performed the work under the contract and that therefore there was no loss at all. The position of the Probation Department and the Government is supported by *United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300 (4th

4

Cir. 2000). In *Brothers*, like this case, a contractor obtained contracts intended for minority owned businesses by fraudulently misrepresenting the ownership of his company. The Fourth Circuit upheld the district court's determination that loss should be the amount of the contract. I nevertheless held that for purposes of determining a Guideline "loss" I would rely on Seventh Circuit authority which has held that loss is equal to the contract price minus the benefit provided, which in this case I determined to be the profit on the contracts.[1] I did, however, take loss in the larger amount of the contract diversion into account in determining the appropriate sentence under 18 U.S.C. sec. 3553, as noted during sentencing and discussed further below. With regard to the amount of the profit, the Government and Mr. Duff put on evidence. I

---

[1] *E.g., United States v. Schneider*, 930 F.2d 555, 558 (7th Cir. 1991). In *Schneider*, the Government failed to prove any loss in a case in which a contract was performed. In this case, even if Mr. Duff's argument were accepted that the City got the value of the cleaning services for which it contracted, the profit to Mr. Duff is not a value given the City and the Government reasonably proved this amount as loss in this case. In writing this opinion, I am less convinced that I was correct in determining "loss" not to be the entire amount of the contract. *Schneider* did not involve a minority/women set aside program in which the contract amounts represent business to be provided to historically disadvantaged groups. The loss of that money for those programs exists whether or not the City obtained services. Under the Guidelines, the preferable route might have been to follow *Brothers*, but to consider a reduction as a downward departure. *United States v. Lane*, 323 F.3d 568, 588 (7th Cir. 2003)("Once the amount of the loss is calculated under the guidelines, the court has the discretion to modify the amount of loss to more accurately reflect the economic realities of the crime ...") But as stated above, I did take the larger amount into consideration in determining a reasonable sentence under *United States v. Booker*.

agreed with the Government's determination for reasons stated during the sentencing hearing and calculated the profit as $10,933,000.

Loss was also calculated on Mr. Duff's insurance scheme. The Probation Department concluded that this loss was the amount of unpaid workers' compensation insurance premiums. The Government agreed with this approach. Mr. Duff maintained that at most this was $300,000 (arguing that since premiums exceeded paid claims there was really no loss). I concluded that the Government's evidence was more persuasive and its expert more credible than Mr. Duff's and determined that the loss, after offsets for revised experience modifiers, was approximately $1,093,000. I also heard testimony with respect to the loss on the tax counts and giving Mr. Duff the benefit of the doubt as to the meaning of certain provisions under the Guidelines, allowed him credit for the tax payments made by others to the federal Government. (While he improperly deducted as salaries millions of dollars that went to family members which were in reality gifts, they paid income tax on the amounts. The Government belatedly attempted to show that lost gift tax was not paid, which would have changed the equation, but I concluded that there was insufficient evidence of the amount that should have been paid.) As a result, for purposes of the Guidelines, I limited loss to the base offense level (increased to level 12 under § 2T1.1(b)(1)).

At the sentencing hearing I made various other Guidelines rulings: that each scheme involved more than minimal planning, that the offense conduct (other than the tax scheme) involved sophisticated means, that Mr. Duff was a leader and organizer and that the insurance scheme victimized 50 or more insurance companies.

The Government objected to any reduction for acceptance of responsibility. As noted above, Mr. Duff's initial attempt to plead "guilty" was based on a factual statement that was a blatant attempt to avoid conviction on most of the charges. When I rejected that attempt, he did enter into a plea to the actual charges in this case, but his plea took hours due to his efforts to admit the very fewest facts that I and the Government would find necessary for a valid plea. At the sentencing hearing, Mr. Duff presented the testimony of two experts, one of whom I did not find credible, and one of whom was not provided evidence by Mr. Duff that the expert agreed was relevant to his opinion. At the hearing, Mr. Duff's attitude, expressed through the expert opinions and arguments of his attorneys, continued to be that no one had really been hurt by his fraudulent conduct or tax evasion. He continued to argue that no one else could competently have done the work his companies did for the City. He also continued to take the position that Mr. Stratton and family members were paid for actual work, contrary to the evidence in this case. Although Mr. Duff gave a prepared speech just before sentencing, it was clear to me throughout Mr. Duff's

7

sentencing hearing that, while like most defendants he is very sorry that he will have to pay the consequences of his actions and is sorry that his family will be hurt, he has never accepted moral responsibility for any wrongdoing.

The Seventh Circuit has held "that in the absence of evidence of sincere remorse or contrition for one's crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility." *United States v. Hammick*, 36 F.3d 594, 600 (7th Cir. 1994). "Rather than relying solely on the defendant's guilty plea to award the reduction, the sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for his offense in a moral sense." *Id.* The judicial inquiry "is a search for expiatory deeds and, failing those, ... for conscience." *Id.*, quoting from *United States v. Beserra*, 967 F.2d 254, 256 (7th Cir. 1992). A defendant can be required to "provide a complete and credible explanation of the conduct involved in the offense of conviction." *Hammick* at 599. The defendant has the "burden of demonstrating that he has actually accepted responsibility for his actions." *United States v. Taliaferro*, 211 F.3d 412, 414 (7th Cir. 2000). Lies and frivolous denial of relevant conduct that the court has concluded is true is

inconsistent with acceptance of responsibility. *Id.;* 1998 Guidelines, § 3E1.1, application note 1(a).

Mr. Duff argued that given his guilty plea I had no discretion to deny him acceptance of responsibility, citing *United States v. Carroll*, 346 F.3d 744 (7th Cir. 2003). In *Carroll* the Court of Appeals concluded that the district court erred in concluding that a defendant had obstructed justice and in otherwise denying acceptance of responsibility, noting the defendant had participated in numerous proffer sessions in which he had described his illegal conduct in detail. The language of the opinion, however, can be read to deny discretion to deny acceptance of responsibility in any case in which a defendant provides a "bare-bones" description of guilt. *Id.* at 750. While I believe that interpretation would be a change from the approach and discretion noted in the cases discussed above, I stated at the sentencing hearing that it is possible that under *Carroll*, on these facts if I were limited to the Sentencing Guidelines that I could not deny the Guideline reduction for acceptance of responsibility despite my belief that his guilty plea is simply "spin control." Since this sentence, under *Booker*, is not limited to consideration of a narrow range following a strict determination of points under a particular Guidelines Manual, however, I considered the sentencing range that would be applicable with or without acceptance of responsibility. *See United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005), in which the court

indicated that in post-*Booker* sentences, there is leeway to consider more than one Guideline range under alternative factual determinations.

*Booker* requires that I consider and specifically look at the factors listed in 18 U.S.C. sec. 3553(a) in determining the appropriate sentence. Foremost among my consideration was the directive that that the sentence be "sufficient but not greater than necessary, to comply with the purposes set forth" in paragraph 2 of the paragraph. Those include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; ... to afford adequate deterrence to criminal conduct; ... to protect the public from further crimes of the defendant...." The statute also directs me to consider the nature and circumstances of the defendant and the kinds of sentences available.

I first looked at the seriousness of Mr. Duff's offense. Mr. Duff's wrongdoing was extensive. His fraud on the City of Chicago and on the insurance companies each took place over many years. As the City noted in a letter to the court in connection with Mr. Duff's sentencing hearing, Mr. Duff's actions in obtaining over $100,000,000 in City contracts under the false pretense that his companies were minority or women owned and run harmed the credibility of the City's programs, and of course the opportunities for minority/women owned businesses to gain entry and experience in

the marketplace. Mr. Duff, out of pure greed, successfully enriched himself and his family, and to the extent of more than $100,000,000 in contracts, prevented legitimate minority/women owned businesses from developing their own experience, credibility, employees, and livelihood. At the same time Mr. Duff was engaged in defrauding the City of Chicago, he engaged in a twelve-year fraud in connection with workmen's compensation insurance. In that scheme, Mr. Duff succeeded for many years in paying low cost premiums for clerical workers while he in fact employed much higher risk manual laborers. Mr. Duff was also guilty of income tax fraud over a three-year period.

Mr. Duff's criminal conduct is worse because of the people he corrupted. Six people were indicted with Mr. Duff. Three have been found guilty, one is set for a later trial, and his own mother failed to stand trial only because of her deteriorating health. In addition five others who testified at trial were given immunity from prosecution because of their cooperation but were clearly participants in his illegal ventures. Mr. Duff corrupted (obviously, with their cooperation) all of the people found guilty or given immunity.

In sentencing Mr. Duff for these crimes, I was also required to consider the need for the sentence "to promote respect for the law, and to provide just punishment for the offense; ... to afford adequate deterrence to criminal conduct; ... to protect the public

11

from further crimes of the defendant...." It was clear that a substantial sentence was required to deter others from engaging in similar fraud, to punish the lengthy and extensive criminal conduct, and to promote respect for the law. I also believed that a substantial sentence was necessary to deter further crimes by Mr. Duff. His criminal actions, covering a multitude of victims, statutes and schemes, went on for a decade or more.

Section 3553 also requires that I consider the nature and circumstances of the defendant. At sentencing, as is common, letters written in support of Mr. Duff indicated he is a good family man. But the crimes to which Mr. Duff pled guilty, and the testimony heard at trial that implicated him, paint a different picture of Mr. Duff.[2] Mr. Duff's actions were not driven by any even perceived necessity. Motivated purely by greed, he was willing to risk harm to all those who worked with him, commanding them to participate in his conduct, and even requiring criminal conduct by his mother. At trial, there were witnesses who were clearly afraid of Mr. Duff, and there was testimony that he threatened physical harm to at least one witness and his family when he believed the witness might stand in the way of his obtaining the City contracts.

---

[2] The sentencing was delayed several times so that both of Mr. Duff's attorneys would have the opportunity to read the trial transcript. While they indicated prior to the sentencing hearing that they intended to refute specific "untrue" trial testimony, no evidence at the sentencing gives me any reason to doubt the facts noted here.

12

After considering each of these factors, and the advisory Guidelines, I concluded that a sentence of 118 months was "sufficient, but not greater than necessary" to satisfy the concerns expressed in the statute. The sentence also included restitution, the imposition of costs, and a term of supervised release.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 27, 2005